**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Al Zeman, et al.,** | ) | **CASE NO.  1:04 CV 1310** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Goodrich Corporation,** | ) | **Memorandum of Opinion & Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon defendant Goodrich Corporation's Motion for Summary Judgment. (Doc. 23).  This employment discrimination action arises out of plaintiff Al Zeman's termination and defendant Goodrich's failure to transfer plaintiffs Al and Sheila Zeman, and alleges (1) breach of contract; (2) age discrimination in violation of Ohio Revised Code § 4112.14; (3) discharge in violation of Ohio's Whistleblower Statute, Ohio Revised Code § 4113.52; and (4) discharge in violation of Ohio public policy.  For the following reasons, the Court grants defendant's Motion.

1

**Facts**

Plaintiffs Al and Sheila Zeman, husband and wife, were longtime employees at an aerospace manufacturing facility located in Aurora, Ohio (hereinafter "the Aurora facility").[1] The Aurora facility had been owned by various entities over the years, and was ultimately purchased by defendant Goodrich Corporation ("Goodrich") in 2002.  (A. Zeman Depo. at 39-40).

Shortly after the purchase, defendant Goodrich announced that the Aurora facility would be closed by December 31, 2003 and the facility's work would be transferred to other locations, including an existing Goodrich facility in Monroe, North Carolina.  (A. Zeman Depo. at 40-41). At the time of this announcement, plaintiff Al Zeman (hereinafter "Mr. Zeman") was employed as a Quality Assurance Group Leader[2] and was a member of the International Association of Machinists (hereinafter "Union"). (A. Zeman Depo. at 40-41).  Plaintiff Sheila Zeman (hereinafter "Mrs. Zeman") was employed as a non-union Repair & Overhaul Administrator. (S. Zeman Depo. at 3).

In anticipation of the Aurora facility's closure, defendant Goodrich and the Union negotiated a Product Relocation and Closure Agreement in early 2003.  (A. Zeman Depo. at 40-41).  This Agreement provided, in part, that union employees at the Aurora facility would receive

---

[1]     Plaintiff Al Zeman had worked at the facility, under various owners, since January 1969. (A. Zeman Aff. at ¶ 3).  Plaintiff Sheila Zeman states that she worked for Lucas Aerospace for 22 years before it was acquired by defendant Goodrich in 2002. (S. Zeman Aff. at ¶ 3).

[2]     Mr. Zeman testified that, as a Group Leader, he was responsible for directing the work of other quality assurance inspectors, but that he lacked the power to hire, fire or discipline other union members.  (A. Zeman Depo. at 17-18).

2

a severance payment provided they remained employed at the Aurora facility until permanent lay-off.  (A. Zeman Depo. at 40-41).  Certain non-union employees were offered a "stay bonus" agreement that provided a severance payment if the employee did not resign or retire prior to the plant closure.  (A. Zeman Depo. at 42).  Mrs. Zeman was offered and accepted a stay bonus agreement. (A. Zeman Depo. at 42).

Shortly after learning of the Aurora facility's imminent closure, Mr. Zeman applied for the position of Quality Supervisor in the Assembly area at the Goodrich Landing Gear facility in Cleveland.  (A. Zeman Depo. at 43).  Among others, Mr. Zeman interviewed with Steve Hoelzer (the Focus Factory Manager) and Gary Gunselman (the Manager of Program Quality).  (A. Zeman Depo. at 43).  Mr. Zeman was selected for the position, and began work on August 15, 2003. (A. Zeman Depo. at 49).

In deposition, Mr. Zeman testified that "every part, every component, every subassembly, [and] every major assembly" for the landing gear division had specific specifications and requirements that would be different from those he worked with in his previous job, and that he would have to learn these differences in his new position as Quality Supervisor. (A. Zeman Depo. at 45).  Mr. Zeman also testified that he would need to learn the manufacturing/assembly processes for the landing gear parts, as well as the tests and inspections that had to be performed for each of these products.  (A. Zeman Depo.at 45-46).  Moreover, Mr. Zeman noted that, as a Quality Supervisor, he would now be responsible for evaluating and disciplining employees, and deciding "whether a new inspector was cutting it or not."  (A. Zeman Depo. at 46).  Despite these differences between his old position and his new job, Mr. Zeman avers in an affidavit attached to his Brief in Opposition that the only training he received to assume the position of Quality

3

Supervisor was a two hour orientation session.  (A. Zeman Aff. at ¶¶ 11-13).

Two months later, on October 17, 2003, Mr. Zeman had his first Performance Assessment in his position as Quality Supervisor.  The Performance Assessment form (A. Zeman Depo. Exh. 3) was completed by Gary Gunselman, and set forth fifteen "competencies" by which Mr. Zeman was evaluated.  For each of these competencies, Mr. Zeman was rated as either "Superior," "Fully Competent," "Developmental" or "Unacceptable."  The "Developmental" rating was further divided into the sub-categories of  "needs improvement" or "developing." According to Mr. Gunselman, the "developing" sub-category means that the employee is developing the necessary skills, while the "needs improvement" sub-category means that the competency must be addressed immediately.  (Gunselman Depo. at 13).

In his October 2003 Assessment, Mr. Zeman was rated "Fully Competent" in the following three competencies: (1) "Ethics, Values, Integrity and Trust," (2) "Interpersonal Savvy," and (3) "Managerial Courage."  In all of the twelve remaining competencies, Mr. Zeman was rated as "Developmental," with four of these competencies further categorized as "needs improvement" and eight as "developing."  Specifically, Mr. Zeman was rated as needing immediate improvement in the following competencies: (1) "Action Oriented," (2) "Effective Teamwork," (3) "Problem Solving," and (4) "Developing Others."  Mr. Gunselman explained his concerns in the Comments section of the form as follows:

> Al has not shown the leadership skills necessary to lead, manage, and train the inspection hourly work force.  He needs to become more aggressive and action-oriented in all the duties and responsibilities as Quality Supervisor.  The expectations are for Al to completely take over managing Assembly Quality and the day to day including manpower planning, status of pulls and final gear inspection status, coordination of MRB [Material Review Board][3] clearances, and training/development of hourly inspectors.  He needs to

---

[3]  According to defendant, when a part is found to be out of specification, the inspector must "tag" the product and the problem is evaluated by a Material

4

get familiar with the product requirements/specifications and the documentation required. Al needs to get more involved with nonconformance review and handling of MRB tags, and taking action to prevent escapes[4] to our customers. With this inspection, I have included a supervisor expectation checklist as an aid and guide to help coach Al in accomplishing the important daily activities necessary.  This form is to be turned in to me daily with objective evidence of completion.  The organization and myself will continue to work with Al in any way we can to make the individual successful in his position/role at Goodrich Landing Gear.  Another assessment will be done in 60 days to review the progress and development.

(A. Zeman Depo. Exh. 3).

Mr. Zeman testified that the above comments were read to him during his evaluation by Mr. Gunselman, but that "[a]t the time that I was being assessed, I was led to believe that [this wasn't] that critical."  (A. Zeman Depo. at 104).  Rather, according to Mr. Zeman, Mr. Gunselman indicated the assessment was "just a matter of formality" and reassured Zeman that "I take care of my people."  (A. Zeman Depo. at 104).  In any event, Mr. Zeman testified that he disagreed with Mr. Gunselman's evaluation and believed that he was performing adequately.  (A. Zeman Depo. at 105).

Mr. Zeman was assessed by Mr. Gunselman again in January 2004. (A. Zeman Depo. Exh. 5).   This time, Mr. Zeman was rated as (1) "Unacceptable" in the category of "Action Oriented," (2) "Fully Competent" in the categories of Ethics, "Interpersonal Savvy," and "Managerial Courage," and (3) "Developmental" in eleven categories, with six of those falling into the sub-category of "needs improvement."  While Mr. Zeman's January 2004 Assessment noted improvements in the areas of scheduling tasks/priorities and handling inspection tags for

---

Review Board ("MRB") engineer who develops a plan for bringing the part into compliance.

[4]    An "escape" occurs when a non-conforming part is shipped to the customer or other Goodrich facility.  (A. Zeman Depo. at 112).

5

nonconforming products, the Assessment noted several serious concerns as follows:

> There are several areas where [Al's] performance has not improved and immediate attention is required.  In the previous assessment in October we developed a daily inspection expectation checklist as an aid to help coach Al in accomplishing the important daily activities necessary. This is not being done.  I have discussed this with Al on several occasions but I have not received this form since November 11, 2003.  One of the major disappointments in Al's performance is that he does not have a handle on the status of final inspection of the product, the process for assuring MRB serialized lists are submitted timely, and the coordination of final clearance through MRB Quality.  I have to get very involved with this on a continual basis. This impacts timely presentation of product to customer representatives and shipment.  In addition, I have received feedback from Assembly management indicating that Al does not react and respond quickly to problems and issues that need resolved. They come to me frequently with problems instead of approaching Al because they don't feel he will respond to their needs.  Al needs to improve his client/customer focus and his performance relative to taking timely actions supporting his internal customers immediately.  Another area that needs improvement is implementing corrective actions to improve assembly product quality, documentation and prevent escape to our customers. . . . In summary, Al has not shown the leadership skills necessary to lead, manage, and train the hourly work force to drive the necessary changes to make Cleveland Assembly successful and reduce costs.

(A. Zeman Depo. Exh. 5).   The Assessment then set forth an action plan for performance improvement, which required Mr. Zeman to submit certain checklists and reports on a daily basis, and others on a weekly basis.  The Assessment concluded by noting that "[f]ailure to complete identified actions will result in further and more severe action being taken."

At approximately the same time, in early January 2004, Mr. Zeman submitted a Self-Assessment, completing the same form used by Mr. Gunselman in Mr. Zeman's October 2003 and January 2004 Performance Assessments. Therein, Mr. Zeman identified 10 competencies as "Developmental." (A. Zeman Depo. Exh. 4).  Of these, Mr. Zeman rated himself as "needing improvement" in 8 competencies, including "action-oriented," "client/customer focus," "problem solving," "self-development," "developing others," "innovative management," "process management," and "strategic ability." (A. Zeman Depo. Exh. 4).

6

After receiving his January 2004 Assessment from Mr. Gunselman, Mr. Zeman met with Rick Swartz, defendant's Human Resources Manager.  At this meeting, Mr. Swartz informed Mr. Zeman that his job would be in jeopardy if he failed to make satisfactory improvement in the areas noted.  (A. Zeman Depo. at 98).  Mr. Swartz indicated that they would meet again on February 20, 2004 to assess his progress.  (A. Zeman Depo. at 170).

Prior to the February 20, 2004 meeting, Mr. Swartz solicited the opinions of Mr. Gunselman and Mr. Hoelzer regarding Mr. Zeman's performance.  In memos submitted to Mr. Swarz, both Messrs. Gunselman and Hoelzer indicated that Mr. Zeman had failed to make significant progress in the weaknesses noted in prior Assessments, and listed specific concerns and problems regarding his performance.  (Swartz Aff., Exhs 1 and 2).[5]  Mr. Gunselman, in particular, concluded that Mr. Zeman's "progress has not been sufficient in fulfilling the expectations and requirements of the position" and that, after review, "I do not believe that Al possesses the requisite skill and experience to fulfill the tasks and responsibilities required of this position." (Swart Aff. Exh. 1).

Based on the above input, Mr. Swartz decided to terminate Mr. Zeman's employment. (Swartz Aff. at ¶¶ 5, 10).  On February 20, 2004, Mr. Swartz and Mr. Gunselman met with Mr. Zeman and informed him that his employment was terminated effective that day because he was not meeting the Company's expectations. (Swartz Aff. at ¶ 10).  Mr. Swartz also determined that Mr. Zeman was not eligible for severance pay under the Goodrich Severance Program applicable

---

[5]     Plaintiffs claim that the memos submitted by Messrs. Gunselman and Hoelzer were not contained in Mr. Zeman's personnel file and not provided in discovery. Counsel for defendant Goodrich, however, avers that these documents (which are bates stamped DEF0022 and DEF0023) were contained in Mr. Zeman's personnel file and produced to plaintiff's counsel in discovery on December 30, 2004. (Stark Aff. at ¶ 2).

to certain employees at the Landing Gear facility because he did not incur a "qualifying termination."  (Swartz Aff. at ¶ 11). [6]

After his termination, in April 2004, Mr. Zeman applied for a Quality Inspector position at defendant's Monroe, North Carolina facility. (A. Zeman Depo. at 169).  He was not interviewed or selected for the position.  (A. Zeman Depo. at 169).  Instead, Goodrich hired two local North Carolina residents for the position, both of whom were significantly younger than Mr. Zeman. (Lynch Aff. at ¶ 12).[7]

Meanwhile, while the above events transpired regarding Mr. Zeman, plaintiff Sheila Zeman also began looking for a new position upon learning that the Aurora facility would be closed.  (S. Zeman Depo. at 9-10).  Specifically, in October 2003, Mrs. Zeman learned that Maintenance Repair and Overhaul ("MRO") activities formerly performed at the Aurora facility would be transferred to defendant's Monroe facility.  (S. Zeman Depo. at 10-12).  In addition to MRO work from the Aurora facility, similar work performed at a Goodrich facility in Englewood, New Jersey was also to be transferred to Monroe after the Englewood facility's closure.  (S. Zeman Depo. at 12).

Mrs. Zeman applied and was interviewed for the position of Contract Administrator at the

---

[6]     Plaintiffs note that, several days before his termination, Mr. Zeman noticed and reported safety hazards relating to cadmium contamination in the landing gear facility.  Mr. Zeman further avers that, on the date of his termination, he noticed damage to the landing gear for an Airbus, and was disturbed when Mr. Gunselman refused to follow the proper procedure for tagging and inspecting the damage. The specific factual allegations underlying these incidents are discussed in further detail in connection with plaintiffs' Whistleblower and Public Policy claims.

[7]     In addition, in November 2003, shortly after his first Performance Assessment, Mr. Zeman applied for the positions of Quality Engineer, Calibration Technician, and Quality Inspector at the defendant's Monroe facility. Although he was interviewed, he was not selected for any of these positions.

8

Monroe facility, the same job she held in Aurora.  (S. Zeman Depo. at 10).  Mrs. Zeman interviewed with Bev Ambler and Dave Ruszala.  (S. Zeman Depo. at 16).  Mrs. Zeman was not selected for the position, which went to an older individual. (S. Zeman Depo. at 20-21).

Subsequently, after Mr. Zeman was terminated, Mrs. Zeman submitted her resignation. In April, 2004, however, she submitted an electronic application for Customer Representative positions at the Monroe facility.  Mrs. Zeman was not interviewed.  The positions went to two local residents of Monroe (both of whom were younger than Mrs. Zeman) and an employee from the Englewood facility.

Plaintiffs subsequently filed their Complaint in the Cuyahoga County Court of Common Pleas on June 7, 2004.  Defendant Goodrich filed a Notice of Removal on July 13, 2004 on the basis of diversity jurisdiction.  Plaintiffs did not oppose Goodrich's Notice of Removal.

Plaintiffs' Complaint sets forth four counts.  Count One alleges breach of contract arising from defendant Goodrich's failure to provide Mr. Zeman with either severance pay or a stay bonus.  Count Two alleges age discrimination in violation of Ohio Revised Code § 4112.14 in connection with Mr. Zeman's termination and defendant's refusal to transfer either Mr. or Mrs. Zeman to the Monroe facility.  Count Three alleges that Mr. Zeman was terminated in violation of Ohio's Whistleblower Statute, Ohio Rev. Code § 4113.52.   Count Four alleges that Mr. Zeman was terminated in violation of Ohio public policy.

Defendant Goodrich filed its Motion for Summary Judgment on April 14, 2005.  It is this Motion that is currently before the Court.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the

9

moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

## I.       Age Discrimination

As set forth above, plaintiffs' Complaint alleges age discrimination in violation of Ohio Rev. Code § 4112.14 in connection with defendant Goodrich's (1) termination of plaintiff Al Zeman; (2) failure to transfer plaintiff Sheila Zeman; and (3) failure to transfer plaintiff Al Zeman.  The Court will address each of these claims in turn.

### A.       Plaintiff Al Zeman– Termination

Through several statutory provisions, Ohio law prohibits age discrimination in the workplace.  Specifically, Ohio Revised Code § 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  Moreover, Ohio Rev. Code § 4112.14(A) prohibits employers from discharging an employee based on age under the following circumstances:

> No employer shall . . . discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements

11

of the job and laws pertaining to the relationship between employer and employee. Ohio Rev. Code § 4112.14(A).

Interpreting these provisions, Ohio courts have held that a plaintiff may establish a prima facie case of age discrimination in either of two ways. *Mauzy v. Kelly Services, Inc.*, 664 N.E.2d 1272, 1276-1278 (Ohio 1996). First, a plaintiff may establish discriminatory intent by introducing direct evidence of age discrimination. *Id.* at syllabus ¶ 1. Under this method, "a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Id. See also Byrnes v. LCI Communications, Inc.*, 672 N.E.2d 145, 148 (Ohio 1996).

Alternatively, a plaintiff may establish a prima facie case of age discrimination indirectly by satisfying the four-part analysis first set forth by the Ohio Supreme Court in *Barker v. Scovill*, 451 N.E.2d 807 (Ohio 1983). Under this method, a plaintiff must demonstrate (1) that he was a member of the statutorily protected class; (2) that he was discharged; (3) that he was qualified for the position, and (4) that he was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Company*, 803 N.E.2d 781, syllabus ¶ 1 (Ohio 2004). With regard to the fourth prong of this test, the Ohio Supreme Court has chosen not to provide an absolute definition of the term "substantially younger" but, rather, has held that that term "is best determined after considering the particular circumstances of each case." *Id.* at syllabus ¶ 2.

If plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Barker*, 451 N.E.2d at 809-810; *Kohmescher v. Kroger Co.*, 575 N.E.2d 439 (Ohio 1991);

*Conway v. Paisley House,* 2003 WL 22038192 at *5 (Ohio Ct. App. 7th Dist. Aug. 28, 2003);

*Hillman v. Safeco Insurance Co. of America,* 190 F.Supp.2d 1029,1034 (N.D. Ohio 2002)

(interpreting Ohio law).  If the employer meets this burden, the burden shifts back to the plaintiff

to show that the employer's non-discriminatory explanation is a mere pretext for intentional age

discrimination.  *Barker,* 451 N.E.2d at 809-810; *Conway,* 2003 WL 22038192 at *5; *Manofsky v.*

*Goodyear Tire & Rubber Co.,* 591 N.E.2d 752 (Ohio Ct. App. 9th Dist. 1990); *Hillman,* 190

F.Supp.2d at 1034.

 In the instant case, defendant Goodrich argues that plaintiff Al Zeman cannot establish a

prima facie case of age discrimination under either the direct or indirect methods of proof.  The

Court will address the parties' arguments regarding each of these methods separately.

 Goodrich first maintains that Mr. Zeman is unable to demonstrate discriminatory intent

under the direct method of proof because (1) the alleged age-biased remarks upon which he relies

can not be linked to the decision to terminate Mr. Zeman's employment; and (2) the managers

who recommended that Mr. Zeman be discharged are the same managers who recommended that

he be hired for the position in the first instance.

 Specifically, Goodrich notes that Mr. Zeman has identified three statements that he

claims demonstrate discriminatory intent.  First, Mr. Zeman alleges that he overheard Mr.

Hoelzer saying the following to Mr. Gunselman:

> He's already talking about retiring when he reaches 60 . . . we've got to get somebody so
> where we can move product with him.  He is not moving product fast enough for us.
> We've got to get somebody younger in here.  We've got to get somebody that we can
> mold into shape.

(A. Zeman Depo. at 157).  Second, Mr. Zeman testified that he heard Mr. Hoelzer refer to

another employee as an "old, fat useless fuck, and I want him gone."  (A. Zeman Depo. at 178).

Third, and last, Mr. Zeman testified that he was told by another employee that Hoelzer said he would not hire a certain job applicant because "he's up in his years.  He's old.  He's set in his ways.  We want somebody young, fresh out of college . . . that we can mold into shape."  (A. Zeman Depo. at 174).[8]

As an initial matter, Goodrich argues that the third statement (i.e. the "he's up in his years" statement) should not be considered by this Court because it is hearsay.  Plaintiffs do not oppose Goodrich's argument or offer any reason why this statement should otherwise be considered by this Court.  Accordingly, the Court finds that the alleged statement by Mr. Hoelzer that an applicant would not be hired because "he's up in his years" is hearsay and inadmissible to create a genuine issue of material fact.

With regard to the first two statements, Goodrich argues that both of these statements were made in reference to persons other than Mr. Zeman and, consequently, plaintiffs are unable to establish a link or nexus between those statements and the decision to terminate Mr. Zeman. Relying on the Ohio Supreme Court's decision in *Byrnes, supra*, Goodrich then argues that, in the absence of such a link, the above statements are insufficient to raise a genuine issue of material fact regarding whether age played a role in the decision to terminate Mr. Zeman.

In response, plaintiffs argue the following. First, plaintiffs maintain that Goodrich "has

---

[8]     In addition, defendant Goodrich notes in its Motion that Mr. Zeman testified that Mr. Gunselman once said to Mr. Zeman: "35 years and you haven't shown me shit." Goodrich argues that this statement does not indicate discriminatory intent because even Mr. Zeman acknowledged in deposition that this comment was intended to mean that, for someone with 35 years experience, Mr. Gunselman thought Mr. Zeman was not doing a good job.  (A. Zeman Depo. at 128-129). Plaintiffs neither oppose defendant's arguments nor argue in their Brief in Opposition that this "35 years" statement establishes discriminatory intent. Thus, the Court finds that discriminatory intent cannot be inferred from this statement.

done exactly what an intentional discriminator would have done" by discharging two older Quality Inspection Supervisors within a one year period, and then replacing one of these Supervisors with Mr. Zeman in order to deflect concerns about age discrimination. Goodrich then, however, allegedly proceeded to set Mr. Zeman up to fail by providing him with inadequate training and denying him the opportunity to learn the products and practices in his new position. Finally, plaintiffs maintain that Goodrich's "near complete lack of specificity" in explaining the reasons for Mr. Zeman's discharge is further evidence of defendant's discriminatory conduct.

Second, plaintiffs argue that the alleged age-biased remarks set forth above are sufficient to create a genuine issue of material fact because all three remarks (1) occurred within a six month period preceding Mr. Zeman's discharge; (2) dealt directly with age; and (3) expressed a clear intent to discharge older employees.

Finally, plaintiffs maintain that, even assuming that Goodrich can espouse a legitimate, nondiscriminatory reason for Mr. Zeman's discharge, that reason is clearly pretextual because (1) defendant failed to provide any definition of the "expectations" it had of Mr. Zeman in his new position; (2) the allegations regarding Mr. Zeman's failure to meet defendant's expectations came after his discharge, are hearsay, lack specificity, and are devoid of documentation; and (3) his supervisors failed to indicate any problems in Mr. Zeman's performance in the month prior to his termination.

The Court will first address the issue of the alleged age-biased remarks.  In *Byrnes v. LCI Communications, supra*, the Ohio Supreme Court considered the circumstances under which age-biased remarks may be sufficient to create a genuine issue of material fact.  In that case, plaintiffs sued after being terminated from high level executive positions at defendant LCI

15

Communications.  At trial, plaintiffs presented evidence of numerous age-biased remarks made by defendant's chief executive officer, Lawrence McLernon.  These remarks included statements by McLernon that (1) he wanted to change the marketing department by "bring[ing] in young, aggressive staff managers and chang[ing] around the old folks; (2) "some of the older folks [in the marketing department] could no longer contribute to the company;" (3) a certain advertising manager was "essentially over the hill" and "too old to grasp the concepts that he was looking for;" (4) another employee was "too old and tired" for the business; and (5) he wanted to hire very young, inexperienced associates to be teamed with older, experienced persons because "those old farts you hired aren't going to be around forever."  *Byrnes*, 627 N.E.2d at 146-147. None of these particular remarks were about either of the specific plaintiffs in the case. However, there was testimony that, on one occasion, McLernon questioned whether one of the plaintiffs might be suffering from Alzheimer's disease.  *Id*. at 147.

The jury returned verdicts in favor of plaintiffs and awarded them damages in the amount of approximately $7.1 million. The court of appeals affirmed in all respects except with regard to the trial court's denial of prejudgment interest.  Defendant LCI Communications appealed.

In a plurality opinion, the Ohio Supreme Court first reiterated that, under its previous decision in *Mauzy*, *supra*,  "[d]iscriminatory intent may . . . be established by direct evidence of age discrimination" and that, under this method, a plaintiff "may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent."  *Id.* at 148.  However, the court went on to hold that "when relying upon the direct evidence standard . . . , an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to

16

establish a violation." *Id*. at 149.  Explaining, the court noted:

> The ultimate inquiry in an age discrimination case is whether a plaintiff-employee was discharged on account of age.  Age-related comments referring directly to the worker may support an inference of age discrimination.  However, comments which are isolated, ambiguous or abstract, or made in reference to totally unrelated employee categories cannot support a finding of age discrimination against employees in a wholly different classification.  There must be a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination to establish a violation of the statute.

*Id*. (internal citations omitted).

Applying this test, the Ohio Supreme Court reversed and found that McLernon's alleged age-biased remarks were insufficient to sustain the jury verdicts for plaintiffs.  Noting that the majority of the remarks did not relate to plaintiffs themselves or the decisions to terminate their employment, the court found that "[t]here was no link or nexus between the remarks and plaintiffs' discharges that could logically support the inference that the discharges were the result of discriminatory intent." *Id*. at 148.  Specifically, the court noted that these remarks were distant in time and fact to plaintiffs' termination and related to other persons and positions within the company.  *Id*. With regard to McLernon's Alzheimer's comment, the court found that, although this comment was directed at one of the plaintiffs and in poor taste, it was nevertheless insufficient to sustain the jury's verdict because the comment was isolated in time and fact to the plaintiffs' terminations.  *Id*. at 149.

Applying *Byrnes'* "causal link" requirement, many Ohio courts have considered the following four factors in determining whether an employer's comments are sufficient to create a genuine issue of material fact regarding discriminatory intent in an age discrimination case: (1) whether the comments were made by a decision maker; (2) whether they were related to the decision-making process; (3) whether they were more than merely vague, ambiguous, or isolated

17

remarks; and (4) whether they were proximate in time to the act of termination.  *See e.g. Hillman*,

190 F.Supp.2d at 1035 (quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.

1994)); *Tessmer v. Nationwide Ins. Co.*, 1999 WL 771013 at *6; *Conway*, 2003 WL 22038192 at

**4-5.

     For the following reasons, the Court finds that the age-biased remarks at issue herein are

insufficient to create a genuine issue of material fact regarding discriminatory intent under the

direct method of proof.  As set forth above, plaintiffs have presented admissible evidence of two

age-biased remarks, both allegedly made by Mr. Hoelzer.  With regard to the first remark,

plaintiff testified that he overheard Mr. Hoelzer state to Mr. Gunselman that: "[h]e's already

talking about retiring when he reaches 60 . . . we've got to get somebody so where we can move

product with him.  He is not moving product fast enough for us.  We've got    to get somebody

younger in here.  We've got to get somebody that we can mold into shape."

     However, Mr. Zeman testified in deposition that he was unsure of who Mr. Hoelzer was

referring to when he made this comment. Specifically, Mr. Zeman testified as follows:

     Q:    Mr. Zeman, who did you believe Mr. Hoelzer was referring to?

     A:    At first I thought he was referring to Tom Siebert.

     Q:    All right.

     A:    Because of Tom telling me that he doesn't want to move up and they were having
           so much problems with the clearing of packages.  Tom was doing the best he
           could, but I thought he was talking about Tom.

           And then later on I got to thinking well, maybe it's Mario.  Mario Pagonis. And
           my mind was kind of jumping around. And Mario Pagonis, because Mario was
           put down by Steve Hoelzer, and he said he's just– he's dedicated to Goodrich, and
           he's just here to do a good job and he's going to do the best he can, no matter
           what Steve does to him.

18

* * *

> [But then] I started pulling this all together.  What this guy was talking about was me because he asked me how old I was.  He asked me, you know, "You look forward to stepping into Gary's position some day?"  And I said, "No, Steve," I says, "I'm going to be happy right where I'm at, because," you know, "it's going to take me years to get a good hold on what's going on here in Landing Gear" you know. I remember having that conversation with him.

(A. Zeman Depo. at 158-159).  *See also* A. Zeman Aff. at ¶ 55.[9]

In light of Mr. Zeman's testimony, above, the Court finds that plaintiffs have failed to demonstrate a causal link between Mr. Hoelzer's "we've got to get somebody younger in here" remark and the decision to terminate Mr. Zeman's employment. Mr. Zeman's deposition testimony reflects a great degree of uncertainty regarding the subject of Mr. Hoelzer's comment. By his own admission, Mr. Zeman's initial conclusion was that Mr. Hoelzer was not referring to him at all, but was referring to another employee.  His ultimate conclusion that Mr. Hoelzer was, in fact, referring to him (i.e. Mr. Zeman) is entirely conjectural.  Thus, while the remark at issue was made by a decision-maker and appears to relate to the decision-making process, the Court finds that plaintiffs' inability to present evidence that the remark related to Mr. Zeman in particular renders the remark vague, ambiguous and insufficient to demonstrate a "causal link"

---

[9]    In support of his Brief in Opposition, Mr. Zeman attaches a lengthy Affidavit in which he avers "I overheard Steve Hoelzer, Assembly Manager, stated in talking about me, 'We've got to get somebody younger in here.'" A. Zeman Aff. at ¶ 55. Defendant Goodrich asks this Court to disregard this paragraph on the grounds that it conflicts with Mr. Zeman's previous deposition testimony on this issue. The Court disagrees. While the Affidavit omits Mr. Zeman's uncertainty, his conclusion in the Affidavit that the remark was about him is the same conclusion that he ultimately reaches in his deposition testimony.  That being said, the Court notes that it will consider both the Affidavit and Mr. Zeman's deposition testimony regarding this issue, i.e., the Court will not ignore Mr. Zeman's deposition testimony regarding his initial uncertainty as to whom Mr. Hoelzer was talking about.

between it and defendant's decision to terminate Mr. Zeman's employment.

With regard to Mr. Hoelzer's "old fat useless" remark, the Court similarly finds that this remark is insufficient to create a genuine issue of material fact.  While this remark is clearly objectionable, plaintiffs acknowledge that it was not made about Mr. Zeman but about another employee.  Moreover, plaintiffs have not otherwise presented any evidence indicating that this remark was related in any way to the decision to terminate Mr. Zeman's employment.

Accordingly, the Court rejects plaintiffs' argument that the age-biased remarks at issue herein are sufficient to create a genuine issue of material fact regarding discriminatory intent under the direct method of proof.

In addition, the Court rejects plaintiffs' argument that direct evidence of discriminatory intent is demonstrated by the fact that defendant terminated two other older Quality Inspection Supervisors in the year prior to Mr. Zeman's termination.  Plaintiffs present no evidence regarding the terminations of these individuals, much less any evidence demonstrating that these particular individuals were terminated because of their age.  Goodrich, on the other hand, presents evidence that (1) one of these Supervisors, Terry Curtain, resigned employment rather than take another position within the Company; and (2) the other Supervisor, Frank Drabik, was terminated for cause.  (Gunselman Depo. at 8-9).

However, even if the Court were to presume that the individuals at issue were discriminated against on the basis of age, the Ohio Supreme Court has noted that "[t]he mere fact that an employer may have discriminated against other employees, standing alone, is insufficient. The issue is whether *this* employee is discharged because of his age." *Byrnes*, 672 N.E.2d at 149 (emphasis in original).

20

Accordingly, the Court finds that plaintiffs have failed to come forward with sufficient evidence to establish a prima facie case of age discrimination under the direct method of proof relating to Mr. Zeman's discharge.

With regard to the indirect method of proof, in order to establish a prima facie case of age discrimination under this method, plaintiffs must demonstrate that Mr. Zeman was (1) a member of the statutorily protected class; (2) discharged; (3) qualified for the position; and (4) replaced by, or the discharge permitted the retention of, a person of substantially younger age.  *Coryell*, 803 N.E.2d at syllabus ¶ 1.

In its Motion for Summary Judgment, defendant Goodrich concedes that Mr. Zeman (DOB 11/12/49) "is within the protected class, was discharged and was replaced by a person 10 years his junior."  (Motion for Summary Judgment at 21).  Goodrich argues, however, that plaintiffs cannot establish a prima facie case because they cannot show that Mr. Zeman was qualified to be Quality Inspection Supervisor since Mr. Zeman's October 2003 and January 2004 Performance Assessments demonstrate that Mr. Zeman was not meeting Goodrich's legitimate expectations at the time he was discharged.

Plaintiffs do not oppose defendant's arguments with regard to this issue.

Ohio courts have held that, in order to establish the "qualified" element of an age discrimination prima facie case, a plaintiff must prove that he/she was performing to the employer's satisfaction.  *See e.g. Wilson v. Precision Environmental Co*., 2003 WL 21291062 (Ohio Ct. App. 8th Dist. June 5, 2003) (stating that "to demonstrate qualification for a position a litigant must not only demonstrate the capability of performing the work, but must also demonstrate that he or she is meeting the employer's legitimate expectations"); *Smith v. Greater*

21

*Cleveland Regional Transit Authority*, 2001 WL 605405 (Ohio Ct. App. 8th Dist. May 24, 2001) (same).  Whether or not an employee is qualified is measured at the time the decision to terminate is made.  *Neubauer v.  The A.M. McGregor Home Corp.*, 1994 WL 197221 (Ohio Ct. App. 8th Dist. May 19, 1994).  Moreover, "when confronted with defendant's motion for summary judgment cataloging the numerous documented instances of dissatisfaction with plaintiff's performance level, the burden [is] upon plaintiff to come forward with affidavits or other acceptable forms of admissible evidence to contradict or rebut the employer's history of frustration and dissatisfaction with his work and attitude."  *Id*.

In the instant case, defendant Goodrich has directed this Court's attention to evidence indicating that Mr. Zeman was not meeting Goodrich's legitimate expectations in his role as Quality Inspection Supervisor at the time the decision was made to terminate his employment. In light of this evidence and plaintiffs' lack of opposition, the Court finds that plaintiffs cannot establish a prima facie case of age discrimination under the indirect method of proof because they cannot demonstrate that Mr. Zeman was "qualified" for the position of Quality Inspection Supervisor.

Moreover, assuming arguendo that plaintiffs could satisfy their burden of establishing a prima facie case under either the indirect or direct methods of proof, the Court finds that defendant Goodrich has come forward with a legitimate, non-discriminatory reason for Mr. Zeman's discharge.  As set forth in detail in the Fact Section of this Memorandum of Opinion & Order, defendant Goodrich evaluated Mr. Zeman on two occasions prior to his termination and, on both occasions, raised serious concerns regarding his performance as Quality Inspection Supervisor.  After setting forth his specific concerns regarding Mr. Zeman's shortcomings in

22

some detail, Mr. Hoelzer concluded (in both evaluations) that Mr. Zeman had "not shown the

leadership skills necessary to lead, manage, and train the hourly work force." (A. Zeman Depo.

Exh. 5).  The Court finds that defendant's concerns regarding Mr. Zeman's performance (as

reflected in his October 2003 and January 2004 performance evaluations) are sufficient to satisfy

defendant's burden of coming forward with a legitimate, non-discriminatory reason for Mr.

Zeman's discharge.

   In addition, the Court rejects plaintiffs' argument that defendant's proffered non-

discriminatory reason is pretextual.  Plaintiffs' entire argument regarding pretext is as follows:

> In this case, a jury could certainly find that the employer's proffered reasons lack
> credence.  In the first place, there is absolutely no definition of the "expectations."  In the
> second place, the allegations relative to the failure to meet expectations came long after
> the fact, are generally hearsay, lack specificity, and are totally devoid of documentation.
> It also strains the credibility to believe the contention that although there were myriads of
> problems with the performance of Zeman and discharge was imminent, the supervisors at
> Goodrich said absolutely nothing to Zeman to correct him or complain about him in the
> month after his last evaluation and that the person who ultimately discharged him stated
> to him about his progress shortly before the discharge, "No news is good news."

(Brief in Opposition at 13).

   As an initial matter, the Court rejects plaintiffs' argument that defendant failed to define

its expectations of Mr. Zeman. Mr. Zeman acknowledged in deposition that defendant Goodrich

conducted two performance evaluations of him prior to his discharge and that the specific

findings of those evaluations were shared with him.  Indeed, Mr. Zeman's signature appears on

both evaluation forms. As set forth above, these evaluations explained in detail defendant's

concerns with Mr. Zeman's performance and specifically indicated the areas in which Mr. Zeman

needed to improve.  For these same reasons, the Court rejects plaintiffs' argument that the

allegations regarding his failure to meet expectations "came long after the fact," lacked

specificity and are devoid of documentation.

With regard to plaintiffs' argument that defendant's allegations are "generally hearsay," plaintiffs fail to provide any explanation regarding how defendant's concerns regarding Mr. Zeman's performance constitute hearsay.  Accordingly, the Court rejects this argument in support of plaintiffs' attempt to demonstrate pretext.

Finally, the Court rejects plaintiffs' argument that pretext is demonstrated by the fact that defendant failed to complain regarding Mr. Zeman's performance in the month prior to his discharge.  By virtue of his January 2004 Performance Assessment, Mr. Zeman was on notice that his job was in jeopardy, that his failure to improve would "result in further and more severe action being taken," and that the situation would be re-assessed in thirty days.  (A. Zeman Depo. Exh. 5).  Under these circumstances, the Court finds that the fact that defendant did not provide an interim assessment to Mr. Zeman regarding his failure to progress is not sufficient evidence to demonstrate pretext.

Accordingly, for all of the above reasons, the Courts finds that, even assuming plaintiffs had demonstrated a prima facie case, (1) defendant has satisfied its burden of coming forward with a legitimate, non-discriminatory reason for Mr. Zeman's discharge, and (2) plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact regarding pretext.

### Conclusion

Thus, the Court grants summary judgment in defendant Goodrich's favor with regard to Count Two of the Complaint to the extent that that Count alleges age discrimination in connection with the termination of Mr. Zeman.

24

### B. Plaintiff Sheila Zeman—Failure to Transfer

In Count Two of their Complaint, plaintiffs also allege that defendant Goodrich discriminated against plaintiff Sheila Zeman (DOB 3/3/61) on the basis of her age when it failed to select her for various positions at its Monroe, North Carolina facility. Specifically, in October 2003, Mrs. Zeman applied for the position of Contract Administrator at the Monroe facility but was not selected for the position. Subsequently, in April 2004, Mrs. Zeman submitted an electronic application for the position of Customer Representative at the Monroe facility and was neither interviewed nor hired.

In order to establish a prima facie case of age discrimination in hiring or promotion, a plaintiff must demonstrate (1) that she was a member of the statutorily protected class; (2) that she suffered an adverse employment action (i.e. that she was not hired despite applying for the position); (3) that she was qualified for the position; and (4) that a substantially younger individual was given the position. *Limberg v. Roosa*, 2004 WL 591082 at *6 (Ohio Ct. App. 2nd Dist. March 26, 2004).[10]

Goodrich argues that plaintiffs cannot establish a prima facie case of age discrimination with regard to Mrs. Zeman's attempts to work at the Monroe facility for the following reasons. First, with regard to Mrs. Zeman's October 2003 application for the position of Contract Administrator, Goodrich argues that Mrs. Zeman cannot establish a prima facie case because the position was awarded to an older applicant, Cindy Polasky (DOB 1/26/56).

With regard to Mrs. Zeman's April 2004 application for the position of Customer Service

---

[10]     Plaintiffs do not present any direct evidence of age discrimination with regard to Mrs. Zeman's failure to transfer claim.

Representative, Goodrich argues that plaintiffs cannot establish a prima facie case because two positions were available and one of those positions was granted to an applicant within the protected age group who was just one year younger than Mrs. Zeman. Specifically, one position was granted to Michele Rosebud (DOB 9/7/62) and the other was granted to Dana Rushing (DOB 6/29/77). (Lynch Aff. at ¶¶ 17, 18). Under these circumstances, defendant Goodrich argues that no inference of discrimination arises because the fact that both an age contemporary and a substantially younger person were hired does not lead to the inference that age motivated the defendant's decision.

In addition, Goodrich argues that, even if Mrs. Zeman could establish a prima facie case with regard to her April 2004 application, plaintiffs have failed to produce any evidence of pretext. Specifically, Goodrich maintains that it had a legitimate, non-discriminatory reason for failing to hire Mrs. Zeman, i.e., that after it staffed the Monroe facility with experienced employees from the Aurora and Englewood facilities, it desired to hire only local residents of North Carolina in order to minimize expenses and maximize employee retention. In support of this argument, Goodrich presents evidence that both Ms. Rosebud and Ms. Rushing were local Monroe residents. (Lynch Aff. at ¶¶ 17, 18). Goodrich argues that plaintiffs cannot come forward with any evidence that this non-discriminatory reason is, in fact, pretextual.

In response, plaintiffs argue that Goodrich's proffered explanation is illogical because (1) at least some of the positions for which Mrs. Zeman applied were filled by individuals who were not from the local Monroe area; and (2) the internet job posting for Customer Service Representative did not indicate that the positions were available only to local Monroe residents. Moreover, plaintiffs maintain that Goodrich's stated reasons for its preference for local Monroe

26

residents (i.e. minimizing relocation expenses and maximizing employee retention) are inapplicable to Mrs. Zeman because (1) there are no "recruiting costs" in hiring Mrs. Zeman and (2) there are no "relocation costs" for Mrs. Zeman since she was not an employee at the time of her application. Finally, plaintiffs note that the interview process itself demonstrates pretext since the interview was "extremely short;" there were "no real questions" asked; and there was no actual review of personnel files.

The Court grants summary judgment in Goodrich's favor with respect to Mrs. Zeman's age discrimination claims for the following reasons. With regard to Mrs. Zeman's October 2003 application for Contract Administrator, the record reflects (and plaintiffs do not dispute) that the position was awarded to an applicant (Cindy Polasky, DOB 1/26/56) who was older than Mrs. Zeman (DOB 3/3/61). *See* S. Zeman Depo. at 28; Exh. 4 to plaintiffs' Brief in Opposition at page 2. Accordingly, with respect to this application, the Court finds that plaintiffs have failed to establish a prima facie case of age discrimination because they have failed to satisfy the requirement that Mrs. Zeman be replaced by a person of substantially younger age. *See Coryell*, 803 N.E.2d at syllabus ¶ 1.

With regard to Mrs. Zeman's April 2004 application, even assuming that Mrs. Zeman can establish a prima facie case, the Court finds that plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact that Goodrich's proffered legitimate, non-discriminatory reason is pretextual. Specifically, Goodrich has come forward with evidence indicating that it intended to initially staff the Monroe facility with experienced personnel from the Aurora and Englewood facilities, but that thereafter "all further non-management hires were from applicants who resided in the area surrounding the Monroe facility," in order to minimize

27

recruiting and relocation expenses and to maximize employee retention. (Lynch Aff. at ¶¶ 4, 6).

Plaintiffs have not come forward with any evidence that Goodrich's general policy of hiring local residents only was not in effect at the time Mrs. Zeman applied for the position at issue.  To the contrary, Mrs. Zeman herself testified that this was her understanding of how the Monroe facility was to be staffed.  *See* S. Zeman Depo. at 15.  Thus, although the job posting may not have indicated that Goodrich was only considering local hires, Mrs. Zeman's testimony is consistent with Goodrich's proffered explanation.  Moreover, the fact that Goodrich did, in fact, hire a non-local individual (i.e., Terry Sandberg (DOB 3/10/55)  for a Customer Representative position before Mrs. Zeman applied is also consistent with this explanation.[11] In sum, it is not for the Court to judge the soundness of Goodrich's policy.  In the absence of any evidence that defendant's policy was not in effect at the time Mrs. Zeman applied, the Court finds that plaintiffs have failed to create a genuine issue of material fact with regard to pretext.

Accordingly, the Court grants summary judgment in defendant Goodrich's favor with respect to Count Two of the Complaint to the extent that Count alleges age discrimination in connection with the failure to transfer plaintiff Sheila Zeman.

### C.     Plaintiff Al Zeman—Failure to Transfer

Finally, in Count Two of their Complaint, plaintiffs allege that defendant Goodrich discriminated against plaintiff Al Zeman (DOB 11/12/49) on the basis of his age when it failed to

---

[11]     In an Affidavit attached to plaintiffs' Brief in Opposition, Mrs. Zeman claims that "Melissa Simmons, a person younger than me was transferred to Monroe from New Jersey in the summer of 2004 to a position for which I applied." (S. Zeman Aff. at ¶ 9).  As Goodrich correctly notes, this assertion is entirely unsupported by any admissible evidence indicating either Ms. Simmons' age or the fact of her transfer.  Accordingly, the Court finds that plaintiffs' unsupported assertion regarding Ms. Simmons is insufficient to create a genuine issue of material fact regarding pretext.

28

select him for various positions at its Monroe, North Carolina facility.  Specifically, in November 2003, Mr. Zeman applied for the positions of Quality Engineer, Calibration Technician, and Quality Inspector at the Monroe facility but was not selected for any of the positions. Subsequently, in April 2004, Mr. Zeman submitted an electronic application for the position of Quality Inspector at the Monroe facility and was neither interviewed nor hired.

Goodrich argues that plaintiffs cannot establish a prima facie case of age discrimination under the indirect method of proof with regard to Mr. Zeman's attempts to work at the Monroe facility for the following reasons.  First, with regard to Mr. Zeman's November 2003 application for the positions of Calibration Technician and Quality Engineer, Goodrich argues that Mr. Zeman cannot establish a prima facie case because (1) the Calibration Technician position was awarded to Thomas Green (DOB 6/14/51), who was only two years younger than Mr. Zeman; and (2) the Quality Engineer position was awarded to Gaye Walston (DOB 10/18/48), who was older than Mr. Zeman.  (Lynch Aff. at ¶¶ 13, 14).  Thus, Goodrich argues that plaintiffs cannot establish a prima facie case as to these positions because they cannot establish that the positions were awarded to individuals substantially younger than Mr. Zeman.

With regard to Mr. Zeman's November 2003 application for the position of Quality Inspector, Goodrich argues that the position was awarded to Mike Kijanski (DOB 8/20/59) because he received a higher rating than Mr. Zeman during the interview process.  (Raszala Aff. at ¶ 6).  Goodrich maintains that Mr. Zeman cannot establish that this reason is a pretext for unlawful age discrimination.

With regard to Mr. Zeman's April 2004 application for the position of Quality Inspector, Goodrich argues that two local applicants (i.e., Greg Furr (DOB 9/30/64) and Jack Yox (DOB

11/20/62)) were awarded this position. (Lynch Aff. at ¶ 12). Goodrich maintains that, at the time Mr. Zeman applied for the position, Goodrich was only considering local hires for the reasons discussed above in conjunction with Mrs. Zeman's failure to transfer claim. Goodrich then argues that plaintiffs cannot demonstrate that this reason is pretextual.

In their Brief in Opposition, plaintiffs do not address any of defendant's arguments regarding plaintiffs' failure to establish a prima facie case with regard to his November 2003 applications for the positions of Calibration Technician, Quality Engineer, and Quality Inspector. Thus, defendant's arguments with regard to these applications are unopposed.

With regard to Mr. Zeman's April 2004 application for the position of Quality Inspector, plaintiffs' response is essentially to incorporate all of the arguments it made in regard to Mrs. Zeman's failure to transfer claim, discussed above. Specifically, plaintiffs argue that Goodrich's alleged legitimate non-discriminatory reason is a pretext for unlawful discrimination because (1) at least one Quality Inspector position for which Mr. Zeman applied was filled by an individual who was not from the local Monroe area; and (2) the internet job posting for the position did not indicate that the positions were available only to local Monroe residents. Moreover, plaintiffs argue that defendant's decision to hire Mr. Yox must have been based on discriminatory reasons since Mr. Yox had never been a Quality Inspector.

The Court grants summary judgment in Goodrich's favor with respect to Mr. Zeman's failure to transfer age discrimination claims. With regard to Mr. Zeman's November 2003 applications, the Court first finds that plaintiffs have not established a prima facie case with respect to Goodrich's failure to hire Mr. Zeman for the positions of either Calibration Technician or Quality Engineer because plaintiffs have not satisfied the requirement of showing that the

30

positions were awarded to substantially younger applicants.  Specifically, Goodrich has presented undisputed evidence that the Quality Engineer position was filled with an applicant older than Mr. Zeman.  Further, the Calibration Technician position was filled with an applicant who was only two years younger than Mr. Zeman.  Ohio courts have found that an age disparity of less than ten years is not sufficient to satisfy the "substantially younger" element of an age discrimination prima facie case.  *See e.g. Conway*, 2003 WL 22038192 at * 3; *Swiggum v. Ameritech Corp.*, 1999 WL 771022 at *9 (Ohio Ct. App. 10th Dist. Sept. 30, 1999).

With regard to Mr. Zeman's November 2003 application for the position of Quality Inspector, even assuming plaintiffs can establish a prima facie case of age discrimination, Goodrich has come forward with evidence of a legitimate, non-discriminatory reason for Mr. Zeman not being hired; i.e. that he did not perform as well during the interview process as the applicant selected for the position.  (Raszala Aff. at ¶ 6).  Plaintiffs do not oppose this argument and have not otherwise come forward with any evidence of pretext.

Thus, for the reasons set forth above and in light of the lack of opposition, the Court finds that plaintiffs have failed to establish a prima facie case of age discrimination with respect to Mr. Zeman's November 2003 applications for transfer.

With regard to Mr. Zeman's April 2004 application for the position of Quality Inspector, the Court finds that Goodrich is entitled to summary judgment with respect to this portion of plaintiffs' age discrimination claims for the same reasons as set forth above in conjunction with Mrs. Zeman's April 2004 application.  Specifically, the Court finds that plaintiffs have not presented any evidence that Goodrich's legitimate, non-discriminatory reason for not hiring Mr. Zeman (i.e., that it was only considering local hires at the time Mr. Zeman applied for the

31

position) is pretextual.[12]

Accordingly, the Court grants summary judgment in defendant Goodrich's favor with respect to Count Two of the Complaint to the extent that Count alleges age discrimination in connection with the failure to transfer plaintiff Al Zeman.

### Conclusion

For all the reasons set forth above, the Court grants summary judgment in defendant Goodrich's favor with respect to Count Two of plaintiffs' Complaint.

**II.    Ohio Whistleblower Act Claim**

In Count Three of the Complaint, plaintiffs allege that Mr. Zeman was "discharged for having made a report of a violation of regulations relative to the use of cadmium to a responsible officer of the Defendant." (Complt. at ¶ 14).  Plaintiffs further allege that Mr. Zeman believed that the alleged violation was either (1) a criminal offense that was likely to cause an imminent risk of physical harm; (2) a hazard to public health and safety; and/or (3) a felony.  (Complt. at ¶ 15).  On the basis of the above allegations, plaintiffs assert that Mr. Zeman was discharged in violation of Ohio's Whistleblower Act, Ohio Rev. Code § 4113.52.

Plaintiffs allege the following facts in support of their Whistleblower claim.  Several days prior to his discharge, Mr. Zeman noted problems with "orangepeeling," a defect in painting caused by excess cadmium coating under the paint. (A. Zeman Aff. at ¶ 44).  Mr. Zeman was advised that employees on the second shift had been directed to sand down excess cadmium and he, in fact, witnessed an employee using "Scotch Brite" to sand down the excess cadmium.  (A. Zeman Aff. at ¶ 44).  Mr. Zeman claims that the employee was not wearing any protective

---

12      The Court finds that plaintiffs' assertion that the individual selected (Mr. Yox) had no experience is not supported by any admissible evidence in the record and, thus, is insufficient to create a genuine issue of material fact as to pretext.

clothing or using a breathing apparatus at the time. (A. Zeman Aff. at ¶ 44).

Because he had not received any training regarding the proper handling of cadmium, Mr. Zeman did not realize there was any problem with the practice of Scotch Briting and suggested that the first shift also begin sanding down excess cadmium.  (A. Zeman Aff. at ¶ 45).  Mr. Zeman states that he was then advised by a fellow employee (Walter Wallowitz) that the procedure was a clear OSHA violation.  (A. Zeman Aff. at ¶ 46).  Concerned, Mr. Zeman made inquiries among the plant employees and was informed that several employees had, in fact, tested positive for cadmium exposure. (A. Zeman Aff. at ¶ 48).  The employees indicated, however, that Goodrich advised them that their positive readings were due to smoking (if they were smokers) or due to second-hand smoke (if they were non-smokers).  (A. Zeman Aff. at ¶ 48).

Mr. Zeman then became concerned regarding other potential safety hazards since "fuzzy cad" was being transported throughout the facility without any mechanism to prevent cadmium dust particles from being released into the plant air.  (A. Zeman Aff. at ¶  47).   Accordingly, Mr. Zeman sent an e-mail to Quality Engineer Christine Dillon regarding his concerns about cadmium contamination and requested immediate action. (A. Zeman Aff. at ¶ 49).  Ms. Dillon allegedly failed to respond to Mr. Zeman's e-mail, although she did apparently tell Mr. Zeman that "she was having problems because the personnel at the plant had been hired off the street and were not experienced."  (A. Zeman Aff. at ¶ 50).  Mr. Zeman was discharged several days later.

Defendant Goodrich claims that plaintiffs' Whistleblower claim fails as a matter of law because Mr. Zeman failed to follow the mandatory procedures set forth in Ohio Rev. Code § 4113.51 et seq.  Specifically, Goodrich argues that Mr. Zeman never submitted a written report

or gave oral notice that he believed defendant violated the law with respect to its handling of

cadmium at the facility, as required by Ohio Rev. Code § 4113.52(A)(1).  In addition, Goodrich

argues that Mr. Zeman did not adequately investigate his cadmium contamination allegations

and, therefore, there is no evidence to suggest that he reasonably believed that a violation of the

law occurred, as required by Ohio Rev. Code § 4113.52(C).  Thus, Goodrich maintains that Mr.

Zeman's Whistleblower claim must fail as a matter of law.

Plaintiffs respond in summary fashion.  First, plaintiffs argue that Mr. Zeman's e-mail to

Christine Dillon satisfied the written report/oral notice requirement, despite the fact that Mr.

Zeman did not notify Ms. Dillon of the specific statute or regulation violated.  Next, plaintiffs

maintain that, even though he did not know which particular statute or regulation was violated,

Mr. Zeman believed that a violation of OSHA regulations occurred because (1) he was told so by

a person in a position to know (i.e., Mr. Wallowitz); and (2) he knew that breathing cadmium

dust posed a hazard to public health and safety.  Accordingly, plaintiffs argue that Mr. Zeman has

established that he followed the procedures set forth in Ohio's Whistleblower Act and is,

therefore, entitled to protection thereunder.

Ohio's Whistleblower Act provides, in relevant part, as follows:

(A)(1)(a)   If an employee becomes aware in the course of the employee's employment of
a violation of any state or federal statute or any ordinance or regulation of a political
subdivision that the employee's employer has authority to correct, and the employee
reasonably believes that the violation is either a criminal offense that is likely to cause an
imminent risk of physical harm to persons or a hazard to public health or safety or is a
felony, **the employee orally shall notify the employee's supervisor or other
responsible officer of the employee's employer of the violation and subsequently
shall file with *that supervisor or officer* a written report that provides sufficient
detail to identify and describe the violation**. * * *

* * *
(B) Except as otherwise provided in division (C) of this section, no employer shall take

34

> any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) of (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. * * *
>
> * * *
>
> (C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section.

Ohio Rev. Code § 4113.52(A)(1)(a), (B), and (C) (emphasis added).

The Ohio Supreme Court has held that, in order for an employee to be afforded protection as a whistleblower under the above statute, he or she must strictly comply with the dictates of § 4113.52. *Contreras v. Ferro Corp.*, 652 N.E.2d 940, syllabus ¶ 1 (Ohio 1995). *See also Fox v. City of Bowling Green*, 668 N.E.2d 898, 901 (Ohio 1996). Indeed, "[f]ailure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras*, 652 N.E.2d at syllabus ¶ 1.

With regard to the statute's oral and written report requirements, Ohio courts have emphasized that "[t]he statute mandates that the employer be informed of the violation both orally and in writing." *Contreras*, 652 N.E.2d at 944. Moreover, as the clear language of the statute indicates, an employee must file his written report of an alleged violation with the *same* supervisor or officer to whom he made his oral report. *Haney v. Chrysler Corp.*, 699 N.E.2d 121, 122 (Ohio Ct. App. 6th Dist. 1997). *See* § 4113.52(A)(1)(a) (requiring that "the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with *that supervisor or officer* a written report that provides sufficient detail to identify and describe the violation").

A written report following an oral notification is required in order to provide the

35

supervisor or responsible person "with a written account of the alleged violation so that it may be better identified and corrected."  *Haney*, 699 N.E.2d at 123.  Therefore, as the statute itself requires, an employee's written report must "provide[] sufficient detail to identify and describe the violation."  *See* Ohio Rev. Code § 4113.52(A)(1)(a).  *See also Haney*, 699 N.E.2d at 122 (finding that appellant failed to comply with statute because written reports "lacked sufficient detail to identify and describe a specific safety violation").

The Court finds that Mr. Zeman failed to satisfy § 4113.52(A)(1)(a)'s oral and written report requirements as a matter of law.  Mr. Zeman avers that he sent an e-mail to Christine Dillon, Quality Engineer, "telling her about the problem with cadmium exposure" and requesting that immediate action be taken.  (A. Zeman Aff. at ¶ 49).[13]  However, plaintiffs do not provide this Court with Mr. Zeman's alleged e-mail, making it impossible for this Court to determine whether it satisfies the statute's requirement that the employee's written report  "provides sufficient detail to identify and describe the violation."

Moreover, plaintiffs do not present any evidence, or even argue, that Mr. Zeman orally notified Ms. Dillon of the alleged cadmium violations prior to sending her his e-mail.  Thus, with

---

[13]     Mr. Zeman's averment that he informed Ms. Dillon of his concerns regarding cadmium contamination in an e-mail clearly contradicts his previous deposition testimony.  Specifically, Mr. Zeman testified in deposition that he did not make a written report regarding his belief that a violation of law had occurred at the facility with respect to cadmium contamination.  *See* A. Zeman Depo. at 167.  It is well-established that a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony.  *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  That being said, defendant Goodrich herein does not move to strike this portion of Mr. Zeman's Affidavit or otherwise argue that it should not be considered by this Court.  In light of Goodrich's lack of opposition to Mr. Zeman's Affidavit, the Court finds that it will consider it in connection with defendant's Motion for Summary Judgment.

36

respect to Mr. Zeman's e-mail to Ms. Dillon, plaintiffs are unable to satisfy the statute's requirement that "the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with *that supervisor or officer* a written report . . ." *See* Ohio Rev. Code § 4113.52(A)(1)(a).

As Goodrich correctly notes, Mr. Zeman testified in deposition that he orally informed Mr. Gunselman that employees were using Scotch Brite to remove excess cadmium and that this practice would cause OSHA to shut down the plant.  (A. Zeman Depo. at 151).  However, Mr. Zeman does not present any evidence or otherwise argue that he subsequently provided written notification to Mr. Gunselman regarding his concerns.  Thus, Mr. Zeman cannot demonstrate compliance with the dictates of § 4113.52 based on his conversation with Mr. Gunselman.

Accordingly, based on the above, the Court finds that Mr. Zeman failed to strictly comply with the dictates of § 4113.52 and, therefore, is not entitled to protection under Ohio's Whistleblower Act as a matter of law.  Thus, the Court grants summary judgment in defendant Goodrich's favor with respect to Count Three of the Complaint.[14]

### III.    Wrongful Discharge in Violation of Public Policy

In Count Four of the Complaint, plaintiffs allege that Mr. Zeman was discharged "for having expressed concerns regarding employee and public safety."  (Complt. at ¶ 19).  Plaintiffs' claim is thus for wrongful discharge in violation of Ohio public policy pursuant to *Greeley v. Miami Valley Maintenance Contractors, Inc*., 551 N.E.2d 981 (Ohio 1990).

In *Greeley*, the defendant terminated plaintiff ostensibly because defendant was forced

---

[14]       In light of the Court's finding regarding Mr. Zeman's failure to meet the oral/written report requirements, the Court further finds that it need not reach Goodrich's arguments regarding Mr. Zeman's alleged failure to adequately investigate his cadmium contamination allegations.

37

to withhold child support from plaintiff's pay check.  Although a statutory scheme made it
illegal to terminate plaintiff under these circumstances, the statute did not afford plaintiff a
private cause of action.  Instead, plaintiff asserted a claim for wrongful discharge in violation of
public policy.  The trial court dismissed plaintiff's complaint and the court of appeals affirmed.
In reversing the court of appeals, the Ohio Supreme Court held,

> We believe it is time for Ohio to join the great number of states
> which recognize a public policy exception to the employment-at-
> will doctrine.  The General Assembly has expressed its will that
> employers be prohibited from discharging employees for the reason
> upon which appellant bases his cause of action.  It is our job to
> enforce, not frustrate, that policy.
>
> Therefore, we hold that public policy warrants an exception to the
> employment-at-will doctrine when an employee is discharged or
> disciplined for a reason which is prohibited by statute.

*Greeley*, 551 N.E.2d at 986.

To establish a claim for wrongful termination in violation of public policy, the claimant
must prove the following,

> "1.  That clear public policy existed and was manifested in a state
> or federal constitution, statute or administrative regulation, or in
> the common law  (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in
> the plaintiff's dismissal would jeopardize the public policy (the *jeopardy*
> element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the
> public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification
> for the dismissal (the *overriding justification* element)."

*Collins v. Rizkana,* 652 N.E.2d 653, 657-58 (Ohio 1995) (quotations omitted) (emphasis in
original). *See also Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-530 (Ohio 2002). The first

two elements, clarity and jeopardy, are questions of law for the court, while the remaining elements generally involve questions of fact for the jury.  *Wiles,* 773 N.E.2d at 530.

In the instant case, plaintiffs' claim that Mr. Zeman was discharged in violation of Ohio public policy is based on two separate incidents.  The first relates to Mr. Zeman's expression of concern regarding Goodrich's procedures for handling cadmium within the facility, discussed above.  The second relates to an incident in which Mr. Zeman raised concerns regarding a damaged landing gear piston.  Each of these incidents provides an independent basis for plaintiffs' public policy claim and, thus, the Court will address each incident separately.

### A.      The Alleged Cadmium Contamination Incident

Goodrich argues that it is entitled to summary judgment on plaintiffs' public policy claim with regard to the alleged cadmium contamination issue because plaintiffs are unable to satisfy either the jeopardy, causation, or overriding justification elements set forth above.[15]  Specifically, Goodrich argues that plaintiffs cannot establish the jeopardy element because Mr. Zeman never complained about any alleged cadmium contamination or otherwise sought to enhance workplace safety.  Rather, Goodrich maintains, Mr. Zeman "simply had discussions with various people about whether using Scotch Brite on cadmium plated surfaces was acceptable." (Motion for Summary Judgment at 28). Goodrich further maintains that plaintiffs cannot establish the causation element because they have failed to produce any evidence that Mr. Zeman's discussion with Mr. Gunselman was a cause for his termination.  Finally, Goodrich notes that Mr. Zeman cannot establish the overriding justification element in light of Mr. Zeman's poor Performance Assessments in both October 2003 and January 2004.

---

[15]      Goodrich concedes that the clarity element is satisfied with respect to this incident. (Motion for Summary Judgment at 28).

39

Plaintiffs respond first that Ohio courts have recognized that discharging an employee for expressing safety concerns does jeopardize Ohio public policy. *See Pytlinski v. Brocar Products*, 760 N.E.2d 385 at syllabus ¶ 1 (Ohio 2002) (holding that "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted").

With regard to the causation element, plaintiffs argue that this element is satisfied based upon the timing, motive and interests of Goodrich in the instant case. Specifically, plaintiffs note that Mr. Zeman was discharged just days after raising concerns regarding cadmium contamination at the Landing Gear facility.  Moreover, plaintiffs claim that Goodrich has a history of "squelch[ing] employees in raising safety concerns."  *See* A. Zeman Aff. at ¶¶ 51-53 (alleging that Mr. Zeman was angrily chastised by Mr. Gunselman for failing to stop employees from complaining about being pressured to ignore safety issues).  Finally, plaintiffs note that causation can be inferred from the fact that, shortly before he was discharged, Mr. Swartz indicated that he had received no recent complaints about Mr. Zeman's performance but then, after raising concerns regarding cadmium contamination, Mr. Zeman was discharged.

Finally, plaintiffs argue that they have established that Goodrich lacked an overriding legitimate business justification for Mr. Zeman's termination for the following reasons.  First, plaintiffs argue that Goodrich failed to adequately define its expectations of Mr. Zeman and, further, that Goodrich has failed to demonstrate with competent evidence that its expectations were not met.  Next, plaintiffs stress that Mr. Zeman believed that he did perform his job well and that Mr. Zeman was never disciplined in the 35 years that he worked at the Aurora facility. Finally, plaintiffs argue that, even if it was unhappy with Mr. Zeman's performance as Quality

Inspection Supervisor, Goodrich cannot articulate any reason for the removal of Mr. Zeman as an employee altogether.  Rather, plaintiffs maintain that "Al Zeman remained a perfect employee in many capacities and Goodrich was hiring persons in the position of Quality Inspector, the position in which Zeman had performed in an exemplary fashion for thirty (30) years." (Brief in Opp. at 24).

The Court finds that Goodrich is entitled to summary judgment in its favor with respect to this claim.  As explained below, even assuming that plaintiffs can establish the jeopardy element, the Court finds that plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact with regard to either the causation or overriding justification elements.

With regard to the causation element, while Mr. Zeman was terminated close in time to his expression of concern over possible cadmium contamination, it is undisputed that Mr. Zeman received two negative performance evaluations prior to either his conversation with Mr. Gunselman or his alleged e-mail to Ms. Dillon.  *See* October 2003 and January 2004 Performance Assessments (A. Zeman Depo. Exhs. 3 and 5).  Moreover, Mr. Zeman himself acknowledged in his January 2004 Self-Assessment that his performance was in need of immediate improvement in at least 8 key areas, including several which were also identified by Mr. Gunselman as problem areas for Mr. Zeman.  *See* January 2004 Self-Assessment (A. Zeman Depo. Exh. 4).  Thus, the Court finds that plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact that Mr. Zeman was discharged because of his expression of concerns regarding cadmium contamination.

This finding is consistent with Ohio case law holding that, while causation is generally an issue of fact for the jury to resolve, summary judgment in an employer's favor is appropriate

41

where a plaintiff fails to establish a genuine issue of material fact as to causation.  *See e.g.*

*Feichtner v. Kalmbach Feeds, Inc.*, 2004 WL 2588620 (Ohio Ct. App. 3rd Dist. Nov. 15, 2004)

(affirming summary judgment in employer's favor on public policy claim on grounds that

plaintiff had failed to create fact issue regarding causation or overriding justification elements

where plaintiff (1) admitted she was doing a sub-par job; and (2) was disciplined twice before

she engaged in her alleged protected activity); *Jurasek v. Gould Electronics, Inc.*, 2002 WL

31545351 at * 11 (Ohio Ct. App. 11th Dist. Nov. 15, 2002) (affirming summary judgment in

employer's favor on public policy claim on grounds that plaintiff had failed to come forward

with any evidence that she was discharged for filing a workers' compensation claim, particularly

where ample evidence existed that defendant had previously raised concerns regarding plaintiff's

ability to effectively perform her job duties).

 With regard to the overriding justification element, as detailed above, Goodrich has come

forward with admissible evidence that Mr. Zeman was not meeting the company's expectations

for several months prior to his discharge.  While plaintiffs claim that Goodrich failed to

adequately define its expectations or to produce "competent evidence" that Mr. Zeman was

deficient, the record belies this claim.  Both the October 2003 and January 2004 Performance

Assessments forms clearly identify and explain Goodrich's concerns with Mr. Zeman's

performance.  Mr. Zeman acknowledged that these forms were shared with him and, indeed, his

signature appears on both forms.  *See* A. Zeman Depo. Exhs. 3 and 5.

 Plaintiffs' only evidence to rebut these Performance Assessments is Mr. Zeman's own

opinion that he was meeting Goodrich's expectations.  However, it is undisputed that Mr. Zeman

himself identified numerous deficiencies in his own performance in his January 2004 Self-

Assessment.  *See* A. Zeman Depo. Exh. 4.  Moreover, an employee may not create a genuine issue of material fact concerning the quality of his work merely by challenging the judgment of his supervisor.  *See Jackson v. Champaign National Bank & Trust Co.*, 2000 WL 1376534 at * 6 (Ohio Ct. App. 10th Dist. September 26, 2000).

Accordingly, for the reasons set forth above, the Court finds that plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact regarding either the causation or overriding justification elements relative to the alleged cadmium contamination incident. Thus, the Court grants summary judgment in Goodrich's favor with respect to Count Four to the extent it alleges a public policy claim based on this incident.

### B.        The A380 Piston Incident

Plaintiffs allege the following facts in support of their public policy claim based on the A380 Piston incident.  In the early afternoon on the day of his discharge, Mr. Zeman noticed that a piston for the landing gear for an Airbus had been dented by a tow motor.[16] (A. Zeman Aff. at ¶ 33).  The proper procedure called for the part to be "tagged." (A. Zeman Aff. at ¶ 36). A "tag" memorializes damage to a part and indicates that an inspection must be conducted to determine if further inspections or repairs must be made.  (A. Zeman Aff. at ¶¶ 36-39).  This testing and inspection procedure is required "in order to rule out the possibility of stress fractures which can lead to the failure of the part."  (A. Zeman Aff. at ¶ 37).  If a part is "tagged," the tag becomes part of the paperwork which goes to the customer.  (A. Zeman Aff. at ¶ 39).

According to Mr. Zeman, work on the Airbus in question was already behind schedule when the landing gear was damaged and Mr. Gunselman refused to have the part tagged

---

[16]        According to plaintiffs, an Airbus is an aircraft designed to carry as many as eight hundred (800) passengers.

"because it would cost too much time and money to have the part inspected." (A. Zeman Aff. at ¶ 41).  Instead, the part was touched up and no documentation was created to show the damage or repair. (A. Zeman Aff. at ¶ 43).

Goodrich argues that it is entitled to summary judgment on plaintiffs' public policy claim with regard to this incident because plaintiffs are unable to satisfy either the jeopardy, causation, or overriding justification elements set forth above.[17]  Specifically, Goodrich argues that plaintiffs cannot satisfy the jeopardy element because the remedial scheme set forth in the Air 21 Act provides an adequate remedy for aggrieved employees.  Further, Goodrich argues that plaintiffs cannot satisfy the causation element because they have failed to produce any evidence that Mr. Zeman was terminated because of his concerns about Mr. Gunselman's failure to tag the damaged piston.  Finally, Goodrich notes that Mr. Zeman cannot establish the overriding justification element in light of Mr. Zeman's poor Performance Assessments in both October 2003 and January 2004.

Plaintiffs' response consists of the same arguments set forth above in connection with their public policy claim based on the alleged cadmium contamination incident.

The Court finds that Goodrich is entitled to summary judgment in its favor with respect to plaintiffs' A380 piston public policy claim for all the reasons set forth above in Section III.A of this Memorandum of Opinion & Order regarding plaintiffs' cadmium contamination public policy claim, i.e., that plaintiffs have failed to come forward with sufficient evidence to create a

_____

[17]    While Goodrich argues that plaintiffs cannot establish the clarity element in their Motion, it concedes in its Reply Brief that plaintiffs can articulate a clear public policy in favor of aircraft safety in light of the Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121. This Act, referred to as the "Air 21 Act," prohibits air carriers or their contractors or subcontractors from discriminating against employees who raise complaints about aircraft safety.

genuine issue of material fact regarding either the causation or overriding justification elements.[18]

Accordingly, the Court grants summary judgment in Goodrich's favor with respect to Count Four of the Complaint.

### IV.    Breach of Contract

Count One of the Complaint alleges that Goodrich is liable for breach of contract for failing to pay Mr. Zeman severance pay[19] based on his thirty-five (35) years of employment at the Aurora facility. (Complt. at ¶¶ 4, 5).

In its Motion for Summary Judgment, Goodrich first argues that, to the extent Mr. Zeman maintains that he is entitled to severance pay under the Product Relocation and Closure Agreement relating to the Aurora facility, his claim fails because Mr. Zeman did not remain employed at the Aurora facility until permanent lay-off.  Plaintiffs do not oppose or otherwise address this argument.

It is undisputed that Mr. Zeman did not remain employed at the Aurora facility until permanent lay-off but, rather, transferred to Goodrich's Landing Gear facility in Cleveland. In light of this fact, and the lack of opposition, the Court finds that Goodrich is entitled to summary judgment in its favor with respect to Count One of the Complaint to the extent Mr. Zeman is seeking severance pay under the Aurora facility Product Relocation and Closure Agreement.

Goodrich next argues that, to the extent Mr. Zeman maintains that he is entitled to

---

[18]    In light of this finding, the Court further finds that it need not consider whether plaintiffs satisfied the jeopardy element with respect to either their cadmium contamination or A380 piston public policy claims.

[19]    While Count One also alleges that Goodrich is liable based on its failure to pay Mr. Zeman a "stay bonus," plaintiffs concede in their Brief in Opposition that Mr. Zeman is not entitled to a "stay bonus" since he was a Union employee. (Brief in Opposition at 7).

severance pay under the Goodrich Severance Program, it is entitled to summary judgment in its favor for the following reasons.  First, Goodrich maintains that the Goodrich Severance Program is a severance plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and, therefore, Mr. Zeman's claim is governed by federal law under ERISA.  Plaintiffs do not oppose this argument.

The Sixth Circuit has held that severance pay plans are included within the definition of "employee welfare benefit plan" under ERISA.  *See e.g. Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409 (6th Cir. 1996).  Moreover, the Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA."  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).  It is only where a state law claim's "effect on employee benefits plans is merely tenuous, remote or peripheral" that such claims are not preempted by ERISA.  *Id.  See also Marks v. Newcourt Credit Group*, 342 F.3d 444, 452 (6th Cir. 2003).

In the instant case, Count One is essentially a claim for wrongful denial of severance benefits and its effect on Goodrich's Severance Program is, thus, neither tenuous, remote or peripheral.  Therefore, and in light of the lack of opposition, the Court will apply federal ERISA law in considering whether Goodrich is entitled to summary judgment in its favor with respect to Count One of the Complaint.

In *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that a denial of benefits under §1132(a)(1)(B) of ERISA must be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *See also University*

46

*Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 845 (6th Cir. 2000); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998). "Where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000).

As the Sixth Circuit has explained, this standard  "is the least demanding form of judicial review." *Killian v. Healthsource Provident Adminstrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)(quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 422*, 64 F.3d 238, 241 (6th Cir. 1995)).  When applying the arbitrary and capricious standard, a court must "decide whether the plan administrator's decision was 'rational in light of the plan's provisions." *Williams,* 227 F.3d at 712.  Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.   See also University Hospitals*, 202 F.3d at 846; *Mitchell v. Dialysis Clinic, Inc.*, 2001 WL 1006291 at ** 2 (6th Cir. Aug. 24, 2001).

In the instant case, the Goodrich Severance Program clearly affords discretion to the trustees to make benefit determinations:

> **10.    ADMINISTRATION AND CLAIMS**
>
>     a) Authority of the Company.  Goodrich shall be the Plan Administrator, as such term is defined in Section 3(16) of ERISA.  The Plan Administrator is responsible for the general administration of the Plan and for carrying out the provisions thereof.  **The Plan Administrator shall have all such powers and discretionary authority as may be necessary to carry out the provisions of the Plan, including the power to determine all questions relating to eligibility for and the amount of any Plan benefits** and all questions pertaining to claims for benefits and procedures for claim review; to resolve all other questions arising under the Plan, including any questions of construction or interpretation of Plan terms; and to take such further action as the Plan Administrator shall deem

47

advisable in the administration of the Plan.

*See* Goodrich Severance Program at § 10 (attached as Exh.3 to Swartz Aff.) (emphasis added).

Thus, the Court will apply the arbitrary and capricious standard of review, i.e.., "decide whether

the plan administrator's decision was 'rational in light of the plan's provisions." *Williams,* 227

F.3d at 712.

      Goodrich argues that its decision to deny Mr. Zeman severance pay was "rational"

because Mr. Zeman did not incur a "Qualifying Termination" under the terms of the Goodrich

Severance Program. Specifically, Goodrich notes that Section 4 of the Severance Program

provides:

> **4.**     **QUALIFYING TERMINATION**.  An Eligible Employee shall be deemed to have incurred a "Qualifying Termination" and shall be entitled to receive Plan Benefits if such Eligible Employee's employment with the Company is terminated for any reason other than the following:
>
> \* \* \*
>
> > **b) Termination for Cause**.  An Eligible Employee shall not be entitled to receive Plan Benefits if such employee's employment with the Company is terminated by the Company for one or more of the following reasons:
> >
> > \* \* \*
> >
> > > v)     **Failure by the Eligible Employee to perform consistently the duties of the position held by such employee in a manner which satisfies the expectations of the Company after such Eligible Employee has been provided written notice of performance deficiencies and a reasonable opportunity to correct those deficiencies**.

*See* Goodrich Severance Program at § 4 (emphasis added).  Goodrich argues that Mr. Zeman did

not incur a qualifying termination under the above provision because (1) he was initially

informed of his performance deficiencies in his October 2003 Performance Evaluation; (2) he

was given sixty days to improve; (3) his performance continued to be deficient and he was

48

informed that he was continuing to fail to meet Goodrich's expectations in his January 2004 Performance Assessment; (4) he was given thirty days to improve; and (5) he thereafter failed to improve his performance and was discharged on that basis.  Under these circumstances, Goodrich argues that its decision to deny him severance benefits was rational under the Plan and it is, therefore, entitled to summary judgment in its favor as a matter of law.

Plaintiffs argue that Mr. Zeman is entitled to severance pay because (1) he was discharged in violation of law; (2) Goodrich failed to adequately define its expectations of Mr. Zeman; (3) there is no evidence regarding which expectations Mr. Zeman failed to meet; and (4) Mr. Zeman was not given a reasonable amount of time to meet Goodrich's expectations.

The Court reject plaintiffs' arguments. First, the Court has granted summary judgment in Goodrich's favor with regard to plaintiffs' age discrimination, whistleblower, and public policy claims.  Thus, the Court finds that plaintiff is unable to demonstrate that he was "discharged in violation of law."

Second, the Court finds that Goodrich did adequately define its expectations of Mr. Zeman through its October 2003 and January 2004 Performance Assessments and that these Assessments clearly set forth the specific expectations that Mr. Zeman failed to meet.

Finally, the Court finds that plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact that Mr. Zeman was not given a reasonable amount of time to meet Goodrich's expectations.  It is undisputed that Mr. Zeman was given time to correct his performance deficiencies on two occasions.  Specifically, he was given 60 days to improve after his October 2003 Performance Assessment, and an additional 30 days to improve after his January 2004 Performance Assessment.  While Mr. Zeman avers that he was given

49

inadequate training and that the demands of his job were great, he does not direct this Court's attention to any specific evidence that the 90 days he was given to improve his performance deficiencies was unreasonable under the circumstances.  Accordingly, the Court rejects plaintiffs' argument that Mr. Zeman is entitled to severance pay because he was not given sufficient time to meet Goodrich's expectations.

Finally, plaintiffs argue that "[e]ven if the discharge were lawful and even if there were 'just cause' for a termination in terms of the needs of the employer, however, there remains an issue as to whether severance pay was improperly denied.  Goodrich makes no claim that Al Zeman did not utilize his best efforts.  It does not deny that he had performed satisfactorily in a similar position for thirty-five (35) years."  (Brief in Opp. at 8-9).

While th Court does not doubt that Mr. Zeman did his best and performed well as a Quality Inspector for many years, the fact remains that this, in and of itself, does not entitle Mr. Zeman to severance pay under the terms of the Goodrich Severance Program. The Program clearly provides that Mr. Zeman is not entitled to severance pay if he is terminated for failing to meet Goodrich's reasonable expectations after being provided with written notice of performance deficiencies and a reasonable opportunity to correct those deficiencies.  Since Mr. Zeman did not incur a "qualifying termination" under the Program, the Court finds that Goodrich's decision not to provide severance pay was "rational" in light of the Program's provisions.

Accordingly, for the reasons set forth above, the Court grants summary judgment in Goodrich's favor with regard to Count One of plaintiffs' Complaint.

### **Conclusion**

For all the reasons set forth above, the Court grants summary judgment in Goodrich's

favor with respect to Counts One through Four of plaintiffs' Complaint.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated:   7/15/05

51